**David C. WALENTAS, Plaintiff,**

v.

**Kenneth LIPPER, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5, Defendants.**

No. 85 Civ. 1712 (LLS).

United States District Court,
S.D. New York.

June 17, 1987.

Fischbein Badillo Schwarz Wiener Gruskin & Lederman, New York City, for plaintiff; Richard S. Fischbein, Kenneth G. Schwarz, Stuart F. Gruskin, of counsel.

Peter L. Zimroth, Corp. Counsel, New York City, for defendant Lipper; Jeffrey Schanback, Steven Anderson, of counsel.

## OPINION and ORDER

STANTON, District Judge.

Defendant Kenneth Lipper moves for summary judgment on the grounds that he (1) has qualified immunity from suit under 42 U.S.C. § 1983 and (2) did not violate plaintiff's liberty interest. Defendant's motion is granted on the first ground.

### Facts

The facts of this case are set forth in an earlier (June 3, 1986) opinion, reported at

636 F.Supp. 331. Plaintiff David Walentas, a real estate developer in New York, brought this action under 42 U.S.C. § 1983 against defendant Kenneth Lipper, at relevant times Deputy Mayor for Finance and Development for New York City, alleging that Mr. Lipper, acting under color of state law, deprived him of property and liberty interests without due process of law.

Mr. Walentas had been conditionally designated developer of a parcel of land in Brooklyn owned in part by New York State and in part by the City of New York. He alleges that Mr. Lipper, who personally disliked Walentas and was dissatisfied with the way he had managed some other business ventures between them, used his powers as Deputy Mayor for Finance and Development and as overseer of the city organization involved in the project to stop Walentas from carrying out his development plans and from being chosen as the developer of the site. Walentas claims that Lipper publicly defamed him through various media, caused the loss of the Brooklyn project and of prospective opportunities for Walentas freely to engage in his chosen occupation, and deprived him of a protected liberty interest without due process of law. The 1986 opinion, 636 F.Supp. 331, dismissed Walentas' claim for deprivation of a property interest, but held that he had stated a claim for deprivation of a liberty interest.

Thereafter, the question whether Walentas sufficiently pleaded a § 1983 claim for deprivation of a liberty interest was certified, by order dated July 3, 1986, as involving "a controlling question of law as to which there is substantial ground for difference of opinion ..." but the Court of Appeals denied Lipper's application for an interlocutory appeal.

Based on that certificate and the paucity of analogous decisions, Lipper argues that he could not be objectively responsible for knowing in 1984 that his alleged actions would violate Walentas' constitutional rights—a later-discovered "liberty interest" —and that accordingly he enjoys a government official's immunity from this suit.

### Discussion
### Qualified Immunity of Government Officials

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), holds that

> government officials performing discretionary functions generally are shielded from liability for civil damages *insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.* See *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. [308] at 322, 95 S.Ct. [992] at 1001 [43 L.Ed.2d 214 (1975]).

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. *If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments,* nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* at 818–19, 102 S.Ct. at 2738–39 (footnotes omitted) (emphasis added). Officials are held to have constructive knowledge of established law. *Salahuddin v. Coughlin,* 781 F.2d 24, 27 (2d Cir.1986). *Harlow* thus established an objective test for immunity: a public official's discretionary actions are immune, regardless of what he actually believed to be the law, if the constitutional right that he is accused of having violated was not clearly established at the time of the alleged violation. *See also Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (even where official's conduct violated statutory or administrative provisions, no liability under § 1983

unless the constitutional right he was alleged to have violated was clearly established at the time of the violation—p. 194, 104 S.Ct. at 3019).

■ Thus the question is whether it was clearly established in 1984 that public defamation of one seeking state employment (but not yet having obtained it), which impairs his chances for other employment, violates his constitutional right to liberty (of occupation) unless due process of law is followed.

The answer is that it certainly was not clearly established. While it was clear that due process was required (a name-clearing opportunity) when the state accompanied the termination of a present employee with defamatory publicity, (*see* cases cited in *Waltentas* [sic], 636 F.Supp. at 337), only one district court case had extended the principle to a situation where the individual had, as here, not yet obtained the employment and was denied it. *Doe v. United States Civil Service Comm'n*, 483 F.Supp. 539 (S.D.N.Y.1980).

The legal principle that a stigmatizing denial of a government job or contract deprives the individual of his occupational liberty is "a nonobvious implication of the due process clause," *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987), and "the scope and details of the rule are not apparent merely from a statement of it." *Ibid.* As the certificate pursuant to 28 U.S.C. § 1292(b) in this case stated, there was substantial ground for difference of opinion about the extension of the "liberty interest" analysis to one in Mr. Walentas' position.

Walentas contends that Lipper's actions violated his clearly established "right ... to contract [and] to engage in any of the common occupations of life...." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). However, the existence of a right to engage in an occupation, and the determination that an action may lie under § 1983 for infringement of that right without due process, are two separate matters on different levels of generality.

The [*Harlow*] test would have little bite if a right clearly established at *any level of generality* could survive it. "The words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established constitutional right. The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Colaizzi*, 812 F.2d at 307–8 (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)). Mr. Walentas' right was not so "particularized" in 1984.

### Conclusion

Defendant has qualified immunity from suit under 42 U.S.C. § 1983 and is entitled to summary judgment. The Clerk is directed to enter judgment dismissing the complaint.